## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILSON K. SOLT,                           :
                                          :
              Plaintiff,                   :        No. 3:19-cv-01088
                                          :
       v.                                  :        (SAPORITO, M.J.)
                                          :
ANDREW SAUL,[1]                            :
Commissioner of                           :
Social Security,                          :
                                          :
              Defendant.                   :

## **MEMORANDUM**

This is an action brought under 42 U.S.C. §405(g), seeking judicial

review of the Commissioner of Social Security's final decision denying

Wilson K. Solt's claim for disability insurance benefits under Title II of

the Social Security Act.  This parties have consented to the jurisdiction

of the undersigned United States Magistrate Judge pursuant to the

---

[1]  Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019.  He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* Section 205(g) of the Social Security Act, 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).  The caption in this case is amended to reflect this change.

provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.  For the reasons stated herein, we AFFIRM the decision of the Commissioner.

## I.    *Background and Procedural History*

Solt is an adult individual born September 13, 1984.  He was twenty-two years old at the time of the alleged onset of disability—July 9, 2007.  (Tr. 12).  Solt's age at the onset date places him in a category of "younger person" under the Commissioner's regulations whose age generally does not affect his ability to adjust to other work. under the Social Security Act.  *See* 20 C.F.R. § 404.1563(c).

On April 7, 2017, Solt protectively filed an application for benefits under Title II of the Social Security Act alleging disability as of July 9, 2007. In his application, Solt alleged that the following impairments prevent him from engaging in any work: trans metatarsal amputation and traumatic neuroma. (Tr. 153).

Solt's claim was initially denied on May 23, 2017.  Thereafter, on July 5, 2017, Solt filed a timely request for an administrative hearing.  His request was granted.  Solt appeared and testified before Administrative Law Judge ("ALJ") Charles A. Dominick on July 19, 2018.

2

Solt was represented by counsel, Keith Pavlack, throughout the proceeding. In addition, impartial vocational expert ("VE") Gerald W. Keating also appeared and testified during the administrative hearing. (Tr. 12, 25).

On August 22, 2018, the ALJ denied Solt's application for benefits in a written decision. On September 21, 2018, Solt sought further review of his claim by the Appeals Council, but his request was denied on May 7, 2019. This makes the ALJ's August 22, 2018, decision the final decision subject to judicial review by this Court.

Solt filed a timely complaint in this Court on June 25, 2019. (Doc. 1). In his complaint, Solt alleges that the final decision of the Commissioner is not supported by substantial evidence and is contrary to law and regulation. (Doc. 1, at 2).

On September 10, 2019, the Commissioner filed his answer, in which he maintains that the ALJ's decision was made in accordance with the law and is supported by substantial evidence. (Doc. 7, at 3).

This matter has been fully briefed by the parties and is ripe for decision. (Docs. 12, 16, and 17).

## II.   *Statement of Facts*

At the time of the administrative hearing, Solt was thirty-three years old and resided alone in a second floor apartment in Lehighton, Pennsylvania, which is in the Middle District of Pennsylvania. (Tr. 200). Solt's past work includes: a lift truck operator and inventory manager. (Tr. 37-38).

Solt completed a high school education.  (Tr. 154).  In 2014, Solt took a course in art history and computers, but stated he missed most of the classes because he was unable to drive. (Tr. 37).

Solt stated that he has a valid driver's license, owns a car which is registered in his name, but does not drive because of neuropathy in his right leg. (Tr. 55).  He stated his father, mother, and brother drive him where he needs to go.  He stated that he last drove over a year before the administrative hearing.  (Tr. 35).  He testified that he drove prior to 2017, but once he was diagnosed with neuropathy in his right leg he stopped driving because he was unable to feel whether his right foot was pressing on the accelerator or the brake.  (Tr. 35).

He stated he enjoys reading, building little electric toys, playing video games, and gardening.   (Tr. 177).

4

Solt indicated that his illness affects his lifting squatting, bending, standing, walking, kneeling, stair climbing, completing tasks, concentration, and getting along with others.  Solt explained that his issues are because he is missing half of his left foot which gives him poor balance.  He stated that he has a hard time concentrating due to the medication and his pain. (Tr. 178).  He stated that he is reasonably able to follow written instruction but he finds difficulty with following spoken instructions.  (Tr. 178).  He indicated he handles stress and changes in routine well. (Tr.  179).

Solt stated he watches television and is able to understand what he is watching.  (Tr. 51).  He stated that he takes naps during the day and that his brother helps him with household chores. He helps with mowing the lawn, doing the laundry, and taking out the garbage.  (Tr. 52).

Solt testified that he is able to go up and down steps slowly.  (Tr. 52).  He testified that he visits his parents occasionally.  (Tr. 54).

Solt testified that he has difficulty sleeping.  He only sleeps about 6 hours, but that is interrupted with pain.  He takes temazepam to help him sleep and uses Icy Hot cream which provides some help.  (Tr. 50).

At the time of the hearing, Solt testified that he takes methadone

for the pain, which he claims works the best with the least amount of side effects.  (Tr. 48-49).

Solt underwent a trial of a spinal cord stimulator implant in June 2015.  Initially, he had almost complete pain relief, but he was still continuing the methadone at bedtime.  (Tr.303-04).  In June 2016, Dr. Mauthe noted that Solt was developing a tolerance for it.  (Tr. 299).  At the hearing, Solt stated he no longer charges the spinal cord stimulator, as he does not believe it works.  (Tr. 48).

Solt attempted to return to work in 2009 at Kovatch Mobile Equipment ("KME"), but he stated he was in too much pain to drive to work most days and KME stated it just wasn't working out. (Tr. 40-41).

Solt indicated that his current medications are:  Methadone, Zofran, and Temazepam.  (Tr. 180).

## III.  *Legal Standards*

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based

upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

any other substantial gainful activity[3] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[4] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[5] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* The claimant bears

---

techniques." 42 U.S.C. § 423(d)(3).

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2).

the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Mason,* 994 F.2d at 1064.

## IV.   *Discussion*

In his August 22, 2018, decision denying Solt's claim, the ALJ evaluated Solt's application for benefits at each step of the sequential process.   At step one, the ALJ found that Solt did not engage in substantial gainful activity since July 9, 2007, through his date of last insured, March 31, 2013. (Tr. 14).   At step two, the ALJ found the following impairments were medically determinable and severe during the relevant period:  left foot trans metatarsal amputation, traumatic neuroma, and obesity. (Tr. 14).   At step three, the ALJ found that Solt did not have an impairment or combination of impairments that met or

medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 15).

Between steps three and four, the ALJ assessed Solt's RFC. After evaluating the relevant evidence of record, the ALJ found that Solt had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except for the following.

> [h]e is limited to more than occasional balancing, stooping, kneeling, crouching, and climbing on ramps and stairs but never crawl and never climb on ladders, ropes, or scaffolds. He must avoid unprotected heights and dangerous moving machinery. He must avoid the use of foot controls with left lower extremity. He must avoid more than brief incidental exposure to extreme temperatures or extreme vibration. He is limited to simple routine tasks, but not at a production rate pace. He is further limited to occupations requiring no more than simple work-related decisions with no more than occasional changes in the work setting.

(Tr. 15).

The ALJ's conclusions at steps four and five of the sequential evaluation process were based on the RFC assessment and the VE's testimony. At step four, the ALJ found that Solt was unable to perform any past relevant work as defined in 20 C.F.R. § 404.1565. (Tr. 18)

At step five, the ALJ relied on the VE's testimony about whether

there were jobs for a hypothetical individual with Solt's age, education, work experience, and RFC. The ALJ found that jobs existed in significant numbers in the national economy that Solt could perform. Specifically, the ALJ found that he could perform the occupations of: order clerk, DOT No. 209.567-014, with approximately 2,500 occupations in the national economy; document preparation, DOT No. 249.587-018, with 20,000 to 21,000 occupations in the national economy; and credit checker, DOT No. 237.367-014 with approximately 14,000 to 15,000 occupations in the national economy. (Tr. 19)

Solt contends the ALJ discounted the functional limitations imposed by his symptoms, including pain, in violation of 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p. (Doc. 12, at 9).

### a. The ALJ's symptom evaluation was reasonably determined.

The Commissioner's regulations explain how an ALJ evaluates a claimant's testimony regarding how symptoms affect the ability to work:

> In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in

> relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

Standing alone, a claimant's allegation of a symptom is not enough to establish an impairment or disability.   20 C.F.R. § 404.1529(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain").   An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so.   *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir.1999), and Soc. Sec. Ruling 96–7p, 1996 WL 374186.).

When evaluating a claimant's subjective allegations, the ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2016 WL 119029.

First, the ALJ must determine whether there is a medically determinable impairment, that can be shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). An individual will not be found to be "disabled based on alleged symptoms alone." *See* Soc. Sec. Ruling 16-3p, 2016 WL 119029, at *4 (explaining that "[i]f there is no medically determinable impairment, or if there is a medically determinable impairment, but the impairment(s) could not reasonably be expected to produce the individual's symptoms" those symptoms will not be found to affect the claimant's "ability to perform work-related activities").

Once the ALJ has found that a medically determinable impairment is established, the ALJ then evaluates the claimant's allegations about the intensity, persistence, or functionally limiting effects of her symptoms against the evidence of record. Soc. Sec. Ruling 16-3p, 2016 WL 1119029, at *4. This evaluation requires the ALJ to "examine the entire record, including the objective medical evidence," the plaintiff's testimony, and any other relevant evidence. (*Id.*)  On March 28, 2016, Soc. Sec. Ruling 96-7p, which provided guidance on assessing the

credibility of a claimant's subjective symptoms, was rescinded and superseded by Soc. Sec. Ruling 16-3p, which instructs adjudicators when "determining whether an individual is disabled" to "consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Soc. Sec. Ruling 16-3p, 2016 WL 119029, at *2.

Here, the ALJ found that Solt's complaints of back pain were not fully supported by the objective evidence of record.  In addition, the ALJ stated that Solt's medical evidence through March 31, 2013, simply does not support a greater degree of impairment. (Tr. 17).

The ALJ pointed to Solt's medical records which disclose a work-related injury to the left foot with partial amputation of several toes.  It required a hospitalization from July 9, 2007 through July 12, 2007, at which time he underwent amputation of the first, second, and third toes and a repair of the laceration of the fourth toe.  On January 16, 2008, Solt had a surgical procedure which consisted of amputation of the first and second toes of the left foot.  On April 9, 2010, Solt had an excision of painful exostosis of the first metatarsal and second metatarsal of the left

foot.  Finally, on February 9, 2012, he had a revision of the left foot amputation to a trans metatarsal amputation.

The ALJ also pointed to the opinion evidence of Angela Walker, M.D., the state agency consultant who found that Solt was capable of a limited range of light work.  The ALJ did not find this opinion persuasive as Dr. Walker did not examine Solt personally and therefore did not fully consider Solt's combination of impairments.  The ALJ found that there was more supportive limitation evidence found at the hearing level.  (Tr. 17)

The ALJ discussed the records of Robert W. Mauthe, M.D., which indicate that he treated Solt since 2007.  Records of September 6, 2013, show that initially he did well, but more recently he had increased pain. At that time, Solt was prescribed Methadone twice a day.  A physical exam showed tenderness on the surgery site, occasional phantom sensations and an antalgic gait with short stance phase but good range of motion of the ankle.  Diagnostic impression was left transmetatarsal amputation and chronic pain syndrome.  The report noted that prior to this date, Solt had remodeled his home, and went back to school. (Tr. 313-14).

In a report dated March 27, 2017, Solt reported that he is continuing with methadone which helps him stay active. He complained of shocks in his lower extremity, but he told Dr. Mauthe that the podiatrist believes it is from his spinal cord stimulator. (Tr. 295).

The ALJ evaluated all of the record evidence, along with Solt's testimony and considered his symptoms and treatment associated with his pain and noted that while Solt continues to struggle with significant pain due to the injury, there was little evidence from February 2012 through March 31, 2013, the date of last insured, to establish greater limitations than his RFC.

In a letter to Austin L. Sedicum, III, DPM, Dr. Mauthe noted that initially Solt did very well, but more recent to September 6, 2013, his activities had increased, as he had remodeled his home and gone back to school, but he is having difficulty controlling his pain. (Tr. 313).

There is record evidence of June 2012, November 2012, April 2013, and December 2013 (Tr. 312, and 12F) wherein Dr. Mauthe states that Solt is capable of sedentary work. The ALJ pointed out that while Dr. Mauthe found Solt capable of "sedentary work only" it was not a full functional analysis of Solt's limitations. In addition, Solt's counsel

requested a letter from Dr. Mauthe more than five years after Solt's date of last insured.  In that letter dated June 22, 2018, Dr. Mauthe opined that Solt was unable to perform work.   The ALJ was not persuaded by the letter.  He pointed-out that while the opinion is inconsistent with all of his previous opinions, Dr. Mauthe noted that he believed Solt was capable of sedentary work prior to March 31, 2013.  (Tr. 429)

In the Function Report Solt completed on May 18, 2017, he described a typical day as follows: he wakes up, takes pain medications, puts his dog out, maybe does some chores, and eats.  Solt testified that he can feed, brush, and put his dog outside.  (Tr. 174).  He stated that he cares for his own personal needs, although it is hard to balance in the shower.  (Tr. 174).  Solt stated he sometimes needs help with cooking depending on his pain level.  (Tr. 174).  He stated that he prepares meals approximately three times a week and makes enough to have leftovers. (Tr. 175). He stated he is able to load/unload the dishwasher.  (Tr. 175). He stated that he can do most chores such as (cleaning, laundry, households repairs, ironing, mowing, etc.)  He is unable to do them consistently, but he is able to do them with the pain medication.  (Tr. 175).   He stated he goes to the grocery store once a week for

approximately 15 minutes.  (Tr. 176).  He is able to pay bills, count change, handle a savings account, and use a checkbook.  (Tr. 176).

As this Court has stated: "[I]t is permissible for such activities to be used to assess a claimant's [subjective allegations] in light of any true contradiction between his or her alleged severity of symptoms and the claimant's activities." *Durden v. Colvin*, 191 F. Supp. 3d 429, 442 (M.D. Pa. 2016).

The ALJ noted that while there was "no question that the claimant continues to struggle with significant pain due to his work-related injury, his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 17).

Ultimately, there is no medical evidence to support a finding of disability during the relevant time period.  The opinions of Dr. Mauthe during that time period opine that Solt was able to perform sedentary work.  (Tr. 312).

The Court finds that the ALJ properly evaluated Solt's subjective allegations, the record evidence, the medical opinions of record, and considered all of Solt's symptoms of foot pain.  In light of all of the

information stated above regarding the ALJ's analysis and explanations, we find that there is substantial evidence to support the ALJ's determinations.

An Order will follow.

**_s/Joseph F. Saporito, Jr._**
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated:  September 29, 2020